## PORTER *vs.* THE NEW YORK CENTRAL RAIL ROAD COMPANY.

A passenger on the N. Y. Central Rail Road, who applies at the ticket office just in time to procure his ticket, and get on board of the train in safety before its actual departure, and who fails to procure a ticket in consequence of the temporary absence of the ticket agent, cannot be charged an extra rate of fare.

The duty is upon the rail road company to keep the office open until the departure of the train ; and the good faith of the conductor in demanding the extra fare, will not relieve the company from the penalty of extortion.

The conductor must be regarded as the agent of the company, in demanding fare of the passengers, and as acting within the scope of his general authority.

*It seems* the company will be liable in such a case, although the conductor acted contrary to orders.

ACTION to recover the penalty of $50, under the provisions of an act of the legislature of this state, entitled "An act to prevent extortion by rail road companies." (*Laws of* 1857, *p.* 432.)

The cause was tried before Justice MORGAN and a jury, at the Onondaga circuit, in February, 1861. The defendant's counsel requested the court to charge the jury : (1st.) That the company was not responsible for the penalty, for the act of the conductor in taking excessive fare, without affirmative proof that they authorized it. Refusal and exception. (2d.) That the defendant was only required, by statute, to keep the ticket office open for one hour previous to the time

fixed for the cars to leave by the time table. (3d.) That if the agent had occasion to step out a minute or two, a reasonable time, after an application for a ticket, should be allowed, to call him.

The court charged that if, when the plaintiff applied for a ticket, the ticket drawer was locked and the key in Curtis' pocket, the plaintiff was not bound to wait until Curtis could be called, or the key obtained ; that in such a case the office was not open, within the meaning of the statute ; *and that if there was time enough after the plaintiff applied for his ticket to make the change and give him his ticket, and enable him to get on the cars with safety before the train started,* had the drawer been unlocked, then the plaintiff was entitled to recover. To which charge, and refusal to charge, the defendants' counsel excepted.

The jury having returned a verdict for $50, judgment was perfected thereon ; and the defendant appealed to this court.

The character of the evidence is sufficiently given in the opinion of the court.

*D. Pratt,* for the appellant.

*Wm. J. Wallace,* for the respondent.

*By the Court,* MORGAN, J. This is an appeal from the judgment of the circuit court, rendered upon the verdict of a jury, against the rail road company, for the penalty of $50, for a violation of an act of the legislature of this state, entitled " An act to prevent extortion by rail road companies," passed March 27, 1857. (*Laws of* 1857, *p.* 432.) The act provides that " any rail road company which shall ask and receive a greater rate of fare than that allowed by law, shall forfeit fifty dollars ; which sum may be recovered, together with the excess so received, by the party paying the same."

The case shows that the plaintiff rode on the defendant's

cars from Chittenango to Syracuse, and that the conductor required him to pay five cents more than the usual fare ; upon the assumption that the plaintiff had entered the cars without a ticket ; which he should have obtained at the ticket office in Chittenango before getting aboard. This additional sum of five cents may be charged upon the passenger who enters the cars without first having purchased a ticket for that purpose, " at any station where a ticket office is established and open ;" and the New York Central Rail Road Company " shall keep the same open for the sale of tickets *at least one hour prior to the departure of each passenger train from such station.*" (*Laws of* 1857, *p.* 488.)

The plaintiff applied at the office of the company at Chittenango for a ticket, and failed to obtain it. This was just prior to the departure of the train ; and it was left to the jury to determine whether there was time enough after the plaintiff applied for his ticket, to procure it and get aboard the cars with safety, before the actual departure of the train. It must therefore be assumed that if the ticket office had been open, the plaintiff could have procured his ticket in time to enter the cars with safety, before their actual departure. It also appeared, in the case, that the office had been kept open until within a few minutes before the plaintiff applied for a ticket, and that the train was behind time ; so that in fact the jury would have been authorized to find that the office was kept open until the advertised time for the departure of the train had expired. It also appeared that the plaintiff was in the neighborhood of the ticket office, and had ample time to go for his ticket ; but that he waited until he heard the whistle of the engine of the approaching train, and then went to the office for his ticket. The ticket agent was absent, but came in on the train, but without the key to the drawer ; so that he was unable to supply the plaintiff with a ticket. Mr. Curtis, who was in charge of the ticket office in the absence of the ticket agent, had stepped out to the train on its approach, and had taken the key with him.

I see by the charge, which it is said I gave to the jury, that I told them that if the ticket office was locked when the plaintiff applied for his ticket, he was not bound to wait until Curtis could be called or the key obtained ; that in such case the office was not open, within the meaning of the statute. There is evidently some mistake here ; and the charge, if made, was not applicable to any state of facts which the evidence authorized ; for both the plaintiff and the ticket agent agree, that there was not time to call in Curtis and procure the ticket before the departure of the train. There might have been a state of facts shown, which would have required the plaintiff to wait until Curtis could be called into the ticket office ; and I very much question whether the instructions given can be sustained, if the facts had shown that the plaintiff had time to get his ticket, even if he had to wait for Curtis to be called in. The exception is to the whole charge, and I do not think it should prevail, unless we can see that the jury were liable to be misled by that part of it which is objectionable. As no evidence was given authorizing the jury to find that there was time for the plaintiff to procure a ticket by calling in Mr. Curtis, the instructions were harmless, and furnish no reason for granting a new trial. The remainder of the charge lays down the proposition that the company would be in default if the passenger applied for his ticket in time to procure it and take the train before its *actual* departure. If the company have nobody there to furnish it, the office is not open, within the meaning of the statute, although the ticket agent had been in attendance only a few minutes before and had temporarily left the office. I do not speak of a case where the passenger knows or has reason to expect the ticket agent back in time to furnish the ticket ; but of the case in hand, where it is conceded that the ticket agent did not intend to make an effort to open the office, and the plaintiff had no ground to expect that a ticket could have been procured in time for him to take the train. The jury have found that if the office had been open when the plain-

Porter *v.* New York Central Rail Road Co

tiff applied for his ticket, he could have procured it in time to enter the cars with safety. It is however claimed that the statute only requires the ticket office to be kept open for one hour preceding the time advertised for the starting of the train; and the learned counsel for the defendant desired me so to instruct the jury. This instruction was refused, and the defendant's counsel excepted. But by referring to the statute it will be seen the language speaks of *the departure of the train,* not of the *time* when its departure is advertised to take place. And this is the obvious intention of the legislature.

Although the New York Central Rail Road Company run their trains by time tables with commendable punctuality, it is not an uncommon occurrence for a train to be some minutes behind time. Sometimes they meet with accidents or obstructions, and do not make regular time by an hour or more. It is not an unusual thing, in such a case, for new passengers to arrive by other roads, who are in time to take the train; who would procure their tickets if the office is kept open till the actual departure of the cars. Shall they be subjected to five cents extra charge because the ticket office has been closed by the regular time advertised for the departure of the train, instead of the time of its *actual* departure? In my opinion, the rail road company is required to keep its ticket office open until the *actual* departure of the train; and if they close it prior to that time, passengers who afterwards apply for tickets in time to enter the cars with safety, cannot be charged the additional fare.

A point is made that the act of the conductor, in exacting this additional charge, was not the act of the rail road company. But I think it is too plain for argument, that the conductor, in exacting fare of passengers, must be regarded as the agent of the company, and acting within the scope of his general authority. And that the company would be liable in such a case, although the conductor acted contrary to

orders. (*Philadelphia and Reading Rail Road Company* v. *Derby*, 14 *How. U. S. Rep.* 468.)

It is no excuse to the conductor that he was mistaken, and demanded the extra fare under the belief that the ticket office at Chittenango was open, and that the plaintiff had omitted to apply for his ticket. The duty is upon the rail road company to keep the ticket office open until the departure of the train; and the good faith of the conductor, in demanding the extra fare, will not relieve the company from the penalty. This would, in effect, allow the company to take advantage of their own neglect, to relieve themselves from its consequences.

If my brethren concur with me in the opinion that there was no evidence given or claim made, that the plaintiff could have waited for Curtis to be called in, in time to get a ticket; and that there was no such opportunity offered to him on the occasion; then I think the exceptions should be overruled, and a new trial denied.

Judgment affirmed.

[ONONDAGA GENERAL TERM, October 1, 1861. *Allen, Mullin* and *Morgan,* Justices.]